Filed 11/21/24  Halbert v. Texas Turbine Conversions CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| KENNETH HALBERT et al.,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>TEXAS TURBINE CONVERSIONS, INC.,<br><br>     Defendant and Respondent. | D083197<br><br><br>(Super. Ct. No. 37-2022-00052060-CU-PL-NC) |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Robinson Calcagnie, Allen F. Davis, and Patrick B. Embrey for Plaintiffs and Appellants.

Leader Berkon Colao & Silverstein, Arthur I. Willner for Defendant and Respondent.

Plaintiffs Kenneth and Shannon Halbert (collectively, the Halberts) appeal an order granting defendant Texas Turbine Conversions, Inc.'s (Texas Turbine) motion to quash service of summons for lack of personal jurisdiction. The Halberts contend the trial court erred in concluding that they failed to establish that California has specific jurisdiction over Texas Turbine in this

action.  We conclude that the Halberts' arguments lack merit and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises from a June 2022 airplane accident that occurred in the vicinity of the Oceanside Municipal Airport, resulting in the death of Paige Halbert.[1]  The Halberts are Paige's parents and heirs.  The aircraft involved in the accident was a Cessna Caravan 208B converted to a "Supervan 900" (the Cessna) using a conversion kit sold by Texas Turbine.

I. *The Cessna and its Conversion*

The Cessna was manufactured and sold some time prior to 2002.  In 2012, Desert Sand Aircraft Leasing, Inc. (DSAL)[2] owned it.  DSAL is a Nevada corporation with its principal place of business in Nevada.  In 2012, DSAL contacted Texas Turbine about converting the Cessna's engine.  Texas Turbine is located in Texas, and its business involves selling and installing engine conversion kits for certain types of aircraft, including, among others, the Cessna Caravan 208B.  That same year, DSAL and Texas Turbine entered into a contract for the sale and installation of an engine conversion kit for the Cessna.  The contract is governed by Texas law.

Texas Turbine sometimes referred customers to authorized installers, such as Intercontinental Jet Services Corp. (Intercontinental Jet).  Intercontinental Jet installed the conversion kit on the Cessna in

---

[1]     Because the decedent and her parents share the same surname, we refer to Paige by her first name throughout this opinion.

[2]     The Halberts sued several defendants in this litigation, including DSAL.  Texas Turbine is the only defendant involved in this appeal.

2

Oklahoma.[3]  After the conversion, DSAL used the Cessna at various locations.  Texas Turbine had no involvement in the operation of the Cessna at any time, including at the time of the accident.

In 2022, DSAL leased the Cessna to GoJump Oceanside, LLC, a California skydiving company.

## II. *The Airplane Accident and the Halberts' Lawsuit*

On the day of the accident, pilots Paige and Matthew Glenn Wampler, were performing skydiving flights.  Wampler was training Paige.  They completed six flights without incident.  On the seventh flight, after they dropped off the skydivers and lined up to land on the airfield, the Cessna lost power and descended rapidly.  The pilots were unable to regain control of the Cessna, and the Cessna crashed in a dirt field on the approach to the Oceanside Municipal Airport runway.  Paige died as a result of her injuries from the crash.

In December 2022, the Halberts filed a complaint for the wrongful death of Paige.  The complaint alleged liability against Texas Turbine under theories of strict and negligent products liability, as well as breach of warranty.

## III. *Texas Turbine's Motion to Quash*

After the Halberts served Texas Turbine with the summons and complaint, Texas Turbine filed a motion to quash service for lack of personal jurisdiction pursuant to Code of Civil Procedure[4] section 418.10.  The Halberts opposed the motion.

---

[3]  Texas Turbine has never authorized a facility in California to perform these installations.

[4]  Undesignated statutory references are to the Code of Civil Procedure.

3

The jurisdictional facts here are undisputed. Texas Turbine is incorporated in Texas. Its principal place of business is also in Texas. It does not have any offices, facilities, property, or employees in California. Its only officer and director, Bobby Bishop, is domiciled and resides in Texas. Texas Turbine performs no services in California, is not registered to do business in California, has never been licensed to do business in California, and has no agent for service of process in California. It has no corporate affiliates or related companies in California. It has never performed engine conversions outside of Texas. It has never sent any mechanics or maintenance personnel to any location in California.

Since its founding in 1995, Texas Turbine has sold three conversion kits to California businesses. In each of these three cases, the aircraft owner contacted Texas Turbine in Texas to initiate the transaction, purchased the engine and installation kit in Texas, entered into contracts governed by Texas law, and had the installations performed either by Texas Turbine in Texas or Intercontinental Jet in Oklahoma.

Between approximately 2012 and 2018, Texas Turbine completed five conversions for DSAL, including the conversion for the Cessna. Texas Turbine became aware after their first sale to DSAL that DSAL sometimes leased airplanes to third parties.

In addition to its five sales with DSAL, Texas Turbine has sold and installed conversion kits for other non-California companies that took the aircraft to California after the conversion was performed. Texas Turbine was not aware at the time of the sale and/or the installation of the conversion kits that the aircrafts would later operate in California. Texas Turbine does not inquire into, track, or know the locations or whereabouts of their customers.

Further, Texas Turbine does not market by geographic region and does not target California in its advertising activities. It does not solicit business through salespeople, agents, or representatives in California. It has not sought to market to California consumers through a California-specific medium. It does not market in California newspapers, on California television, on California radio, or through California-directed mailers.

Instead, Texas Turbine engages in nationwide marketing efforts through email, social media, and air and trade shows. For instance, Texas Turbine occasionally advertises through email blasts, but these are sent only to generalized lists of aircraft owners throughout the United States or worldwide. The air and trade shows that Texas Turbine attends are typically held in Wisconsin, Florida, and Arizona. Texas Turbine may have attended one air and trade show in California about eight to 10 years ago.

IV. *The Trial Court's Order*

The trial court found that while Texas Turbine has some connection to California, the connection is not substantial or significant. It also found there was no evidence that Texas Turbine deliberately engaged in significant activities within California. It further found that if any of Texas Turbine's marketing or advertising efforts reached California or California-based customers, that occurred through means not specifically directed at California. It concluded the Halberts did not meet their burden of showing Texas Turbine's contacts with California rise to the level of purposeful availment and granted the motion to quash.

The Halberts timely appealed.

5

DISCUSSION

I. *Legal Principles of Jurisdiction*

California courts may exercise jurisdiction on any basis consistent with the United States and California Constitutions. (§ 410.10; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*), abrogated on another ground in *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 369-370.) "The exercise of jurisdiction over a nonresident defendant comports with these Constitutions" if the defendant has sufficient minimum contacts with the state "such that the maintenance of the suit does not offend ' "traditional notions of fair play and substantial justice." ' " (*Pavlovich*, at p. 268; *International Shoe Co. v. Wash.* (1945) 326 U.S. 310, 316.)

Under the minimum contacts test, courts examine the quality and nature of the defendant's activities in the forum state to determine whether it is fair and reasonable to require the defendant to submit to the jurisdiction of that state. (*Pavlovich, supra,* 29 Cal.4th at p. 268; *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 221 (*Strasner*).) Personal jurisdiction may be either general (sometimes called "all-purpose") or specific (sometimes called "case-linked"). (*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (2021) 592 U.S. 351, 358 (*Ford Motor*).) Only specific jurisdiction is at issue in this appeal.

It is well-established that specific jurisdiction exists when: (1) "the defendant has purposefully availed himself or herself of forum benefits"; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' "; and (3) " 'the assertion of personal jurisdiction [over the defendant] would comport with "fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446–447 (*Vons*

6

*Companies*); accord, *Pavlovich, supra*, 29 Cal.4th at pp. 269, 273.) There are no bright line rules for determining jurisdiction. " '[R]ather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' " (*Pavlovich*, at p. 268.)

When a defendant moves to quash service of process based on lack of personal jurisdiction, the plaintiff bears the initial burden of establishing the first two elements of specific jurisdiction by a preponderance of the evidence. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110 (*Automobile Antitrust*); *Vons Companies, supra*, 14 Cal.4th at p. 449.) If a plaintiff proves purposeful availment and relatedness, then the defendant has sufficient minimum contacts with the state to warrant the court's exercise of jurisdiction. (See *Vons Companies*, at p. 447.) Thus, after the plaintiff meets its burden of proof, the burden shifts to the defendant to convince the court "that the exercise of jurisdiction would be unreasonable." (*Id.* at p. 449.)

When the evidence of jurisdictional facts is in conflict, we resolve that conflict in favor of the trial court's order, as long as it is supported by substantial evidence. (*Vons Companies, supra*, 14 Cal.4th at p. 449.) Where, as here, the evidence is undisputed, then "the question of jurisdiction is purely one of law and [we] engage[ ] in an independent review of the record." (*Ibid.*)

II. *Specific Jurisdiction: Purposeful Availment*

We first consider whether the Halberts have established that Texas Turbine purposefully availed itself of the privilege of conducting activities within California.

Purposeful availment focuses on the defendant's intentions. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 (*Snowney*).)

7

"[P]urposeful availment occurs where a nonresident defendant ' "purposefully direct[s]" [its] activities at residents of the forum' [citation], ' "purposefully derive[s] benefit" from' its activities in the forum [citation], 'create[s] a "substantial connection" with the forum' [citation], ' "deliberately" has engaged in significant activities within' the forum [citation], or 'has created "continuing obligations" between [itself] and residents of the forum' [citation]." (*Id.* at p. 1063.)  Thus, purposeful availment only exists when a "defendant purposefully and voluntarily directs his [or her] activities toward the forum." (*Pavlovich, supra*, 29 Cal.4th at p. 269.)  The benefits defendants receive from their targeted activities at the forum puts them on notice that they are subject to suit in that forum's jurisdiction.  (See *Snowney, supra*, 35 Cal.4th at pp. 1062-1063; *Pavlovich,* at p. 269.)

However, a defendant will not be subject to a forum's jurisdiction solely because "of random, fortuitous[,] or attenuated contacts[,] or because of the unilateral activity of a third party." (*Automobile Antitrust, supra,* 135 Cal.App.4th at p. 108.)  Neither will a defendant be subject to a forum's jurisdiction solely because he or she places a product into the stream of commerce with the "awareness that the stream . . . may or will sweep the product into the forum [s]tate." (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112 (*Asahi Metal*).)

Instead, the defendant must take some action purposefully directed toward the forum state, such as "designing the product for the market in the forum [s]tate, advertising in the forum [s]tate, establishing channels for providing regular advice to customers in the forum [s]tate, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum [s]tate." (*Asahi Metal, supra,* 480 U.S. at p. 112*;* accord, *Vons Companies, supra,* 14 Cal.4th at p. 447 [purposeful availment exists when

8

defendant delivers product into stream of commerce with expectation consumers in forum will purchase product]; *Preciado v. Freightliner Custom Chassis Corp.* (2023) 87 Cal.App.5th 964, 978 (*Preciado*) [purposeful availment exists in products liability cases when nonresident manufacturer knows and intends product will enter and be used in forum].)

Here, Texas Turbine is incorporated in and has its principal place of business in Texas. It has no offices, facilities, employees, or property in California. It performs no services in California, is not registered to do business in California, has never been licensed to do business in California, and has no agent for service of process in California. It also has no corporate affiliates or related companies in California. Because Texas Turbine conducts no activity in California, it has not created any connection, let alone a substantial one, with California. (See *Snowney, supra*, 35 Cal.4th at p. 1063.)

Further, since its founding in 1995, Texas Turbine has sold three conversion kits to California businesses. In each of these three cases, the aircraft owner contacted Texas Turbine in Texas to initiate the transaction, purchased the engine and installation kit in Texas, entered into contracts governed by Texas law, and had the installations performed either by Texas Turbine in Texas or Intercontinental Jet in Oklahoma. The same can be said for the Cessna that DSAL purchased from Texas Turbine in 2012. Texas Turbine has never performed engine conversions outside of Texas. It also has never sent any mechanics or maintenance personnel to California. Simply stated, in every aspect of the sale, purchase, and installation of its conversion kit, the customer comes to Texas Turbine. Texas Turbine does not go to the customer. Accordingly, Texas Turbine does not purposefully direct its activities at California. (See *Snowney, supra*, 35 Cal.4th at p. 1063.)

9

In addition, as the Halberts concede, Texas Turbine does not market by geographic region and does not target its advertising in California. Rather, Texas Turbine engages in nationwide marketing. For instance, Texas Turbine occasionally sends email blasts to generalized lists of aircraft owners throughout the United States or worldwide. It also attends air and trade shows, which are typically held in Wisconsin, Florida, and Arizona. It does not market in California newspapers, on California television, on California radio, or through California-directed mailers. If any of Texas Turbine's marketing or advertising efforts have reached California or California-based customers, that has occurred through means not specifically directed at California.

The Halberts point out that Texas Turbine became aware after the first sale to DSAL that DSAL would sometimes lease airplanes to third parties. Thus, presumably Texas Turbine was aware that the airplanes installed with their conversions could operate in California. But Texas Turbine does not inquire into, track, or know the locations or whereabouts of their customers. Texas Turbine does not deliver its conversion kits into the stream of commerce with any awareness, let alone the expectation, consumers in California will purchase it. (See *Vons Companies, supra*, 14 Cal.4th at p. 447.) Therefore, Texas Turbine's contacts with California are attenuated at best. (See *Automobile Antitrust, supra,* 135 Cal.App.4th at p. 108.)

Moreover, Texas Turbine has not taken the "something more" actions required to establish purposeful availment: it has not designed the conversion kit for the California market, it has not established channels for providing regular advice to customers in California, nor has it marketed the

10

conversion kit through a distributor who serves as the sales agent in California.[5]  (See *Asahi Metal, supra,* 480 U.S. at p. 112.)

The three main cases the Halberts rely on in support of their position do not compel a different conclusion.  The Halberts contend Texas Turbine purposefully availed itself of the benefits of California because it made substantial sales to California residents and made substantial efforts to market and sell its products nationally, including to California.[6]  They point us to two cases that allegedly define "substantial" in the purposeful availment context:  *Thurston v. Fairfield Collectibles of Georgia, LLC* (2020) 53 Cal.App.5th 1231 (*Thurston*) and *As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859 (*As You Sow*).

Texas Turbine contends that how "substantial" is defined in these cases is not the critical question.  Rather, the critical question is whether the nature and quality of the defendant's conduct shows the defendant engaged in purposeful conduct directed towards the forum state.  (See *Thurston, supra*, 53 Cal.App.5th at p. 1240; *As You Sow, supra*, 50 Cal.App.4th at pp. 1869–1870.)  We agree with Texas Turbine.  (See *Pavlovich, supra*, 29 Cal.4th at p. 268 [minimum contacts test requires examination of nature and quality of defendant's activities in forum]; *Strasner, supra,* 5 Cal.App.5th at p. 221 [same].)

---

[5]     While Texas Turbine's nationwide advertising efforts may reach California, their efforts do not target California.

[6]     The Halberts also contend purposeful availment exists because Texas Turbine benefited from exploiting the market of skydiving aircraft in California.  The Halberts do not develop this argument, so they fail to carry their burden to show the trial court erred in this respect.  (See *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.)

11

Further, *Thurston* and *As You Sow* are distinguishable from this matter. In *Thurston*, the court found the defendant made a substantial number of sales of goods or services to California residents through its website, and these sales were the equivalent of having a virtual store in California. (*Thurston, supra*, 53 Cal.App.5th at pp. 1235, 1239-1241.) In *As You Sow*, the court found the defendant "contract[ed] directly with private distributors located in California," "purposefully consummated business arrangements with California companies on 16 separate occasions [over a period of six years] so it could profit from the products' use in California," and made a direct effort to serve the California market. (*As You Sow, supra,* 50 Cal.App.4th at pp. 1863, 1870-1871.) Both courts found these facts sufficient to establish purposeful availment. (*Thurston,* at pp. 1240-1241; *As You Sow,* at pp. 1870-1871.)

In contrast to *Thurston*, here there is no evidence that Texas Turbine maintains a website or does anything to solicit sales from California residents. And, as the Halberts concede, Texas Turbine's marketing efforts do not target California.

Further, in this case, unlike in *As You Sow*, Texas Turbine did not contract with anyone in California regarding the Cessna. The contract for the Cessna is between Texas Turbine and DSAL, a Nevada corporation. This contract is governed by Texas law. The Halberts point to the three conversion kits Texas Turbine sold to California businesses as evidence Texas Turbine purposefully consummated business arrangements in California. But, as noted previously, in each of these three cases, the aircraft owner initiated the transaction, purchased the conversion kit in Texas, entered into contracts governed by Texas law, and had the installations performed in Texas or in Oklahoma. Because in each instance the California business

12

initiated the sale and no part of the transaction had anything to do with California, Texas Turbine's sales to California businesses do not show purposeful availment.

Therefore, this case is different from *Thurston* and *As You Sow* because the quality and nature of Texas Turbine's activities in California do not show purposeful availment. (See *Pavlovich, supra,* 29 Cal.4th at p. 268; *Strasner, supra,* 5 Cal.App.5th at p. 221.)

Finally, we address *West Corporation v. Superior Court* (2004) 116 Cal.App.4th 1167 (*West Corporation*), which the Halberts rely on for the proposition that companies who engage in nationwide marketing efforts should reasonably expect to be subject to lawsuits in the states where they solicit business. But that is not what *West Corporation* holds.

In *West Corporation*, a nonresident telemarketing corporation argued the California court did not have jurisdiction over it because, among other reasons, the plaintiff contacted it to purchase a product. (*West Corporation, supra,* 116 Cal.App.4th at p. 1171.) The court found while plaintiff initiated the call to the corporation for the purpose of purchasing one product, it was the corporation who initiated the upsell of another product. (*Id.* at p. 1176.) It viewed the upsell as a separate transaction and as an intentional sales pitch aimed at a California resident. (*Id.* at pp. 1176-1177.) It therefore concluded the corporation purposefully availed itself of the privileges of conducting activities within California. (*Id.* at p. 1176.) While it stated telemarketers who engage in nationwide marketing could be subject to the personal jurisdiction of every state in the nation, that was in context of the fact that upselling is a big business in telemarketing, and upselling is considered targeted activity towards a consumer. (See *id.* at pp. 1179-1180.)

13

In contrast to *West Corporation*, there is no evidence here that Texas Turbine intentionally aimed a sales pitch at a California resident or tried to sell a California resident an upsell of the conversion kit. Nor have the Halberts made this contention. *West Corporation* is therefore not applicable.

Because Texas Turbine has not purposefully availed itself of the benefits of conducting activities in California, the trial court correctly found that the Halberts did not meet their burden of proof on the element of purposeful availment. (See *Automobile Antitrust, supra,* 135 Cal.App.4th at p. 110; *Vons Companies, supra*, 14 Cal.4th at pp. 446-447, 449.)

III. *Specific Jurisdiction: Relation of the Halberts' Claims to Texas Turbine's Contacts*[7]

We next examine whether the Halberts have established that their claims against Texas Turbine in this lawsuit arise out of or are related to Texas Turbine's contacts with California. (See *Vons Companies, supra,* 14 Cal.4th at p. 446; *Preciado, supra*, 87 Cal.App.5th at p. 980.) While a plaintiff's claim does not have to arise directly from the defendant's contacts with the forum state, the claim must have a "substantial connection" to the defendant's contacts with the forum state to warrant the court's exercise of specific jurisdiction. (*Vons Companies,* at p. 452; accord, *Ford Motor, supra*, 592 U.S. at pp. 359-360 [" '[T]here must be "an affiliation between the forum and the underlying controversy." ' "].)

The Supreme Court recently explained the " 'arise out of or relate to' " language in the specific jurisdiction context: "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some

---

7    The trial court made no finding regarding whether the Halberts' claims in this litigation arise out of or are related to Texas Turbine's contacts with California. In our de novo review, we examine this factor. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

14

relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." (*Ford Motor, supra,* 592 U.S. at p. 362, italics omitted.)

In this case, Texas Turbine sold a conversion kit that was installed in the Cessna that eventually operated in California. The Halberts concede the Cessna and Texas Turbine's sale of the conversion kit for the Cessna had no direct connection to California at the time of the conversion. Instead, they contend the fact that the Cessna was later taken to California establishes a substantial connection between their claims and Texas Turbine's contacts with California.

However, as indicated above, Texas Turbine's involvement with the Cessna had nothing to do with California. Texas Turbine's involvement with the Cessna begins and ends with selling an engine conversion kit in Texas to DSAL in 2012. Texas Turbine did not install the conversion kit, so it did not modify the Cessna: It simply sold the conversion kit for the modification. There is no evidence that Texas Turbine had anything to do with the Cessna after 2012. Thus, it is a far stretch for the Halberts to contend Texas Turbine's activities in Texas (and not in California) relate to the airplane accident in California (that happened 10 years later) simply because the Cessna eventually ended up in California. The connection between the Halberts' claims and Texas Turbine's contacts with California is attenuated at best. (See *Vons Companies, supra,* 14 Cal.4th at p. 452.)[8]

---

[8] Because we conclude the Halberts have failed to demonstrate purposeful availment and relatedness, we need not address whether the exercise of personal jurisdiction would be fair or reasonable in these circumstances.

DISPOSITION

The order is affirmed.  The Halberts to pay Texas Turbine's costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.