Filed 8/17/20

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| T.A.W. PERFORMANCE, LLC,<br>    Plaintiff and Appellant,<br><br>v.<br><br>BREMBO, S.P.A.,<br>    Defendant and Respondent. | A157400, A157841<br><br>(Sonoma County<br>Super. Ct. No. SCV263262) |

Plaintiff T.A.W. Performance, LLC (TAW) appeals from the trial court's (1) grant of defendant Brembo, S.p.A.'s (Brembo) motion to quash service of the summons for lack of personal jurisdiction; and (2) denial of TAW's motion for reconsideration. We affirm.

## I.    BACKGROUND

On July 1, 2014, Brembo, an Italian joint stock corporation with its headquarters in Italy, and TAW, a California limited liability company with its principal office in North Carolina, entered into a written "Exclusive Distribution Agreement" (hereinafter the agreement). Brembo manufactured brake systems for vehicles (hereinafter referred to as products), which were exported for

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Parts III and IV.

international sale.  Under the agreement, TAW was appointed as the sole and exclusive distributor of Brembo's products to be resold by TAW to third parties within the "Territory" of the United States, Canada, and Mexico.

The agreement had a five-year term, from July 1, 2014 to June 30, 2019.  Early termination could be effectuated by either party giving at least one (1) year's notice in writing.  In the event of a dispute not resolved by mediation, the parties consented "to the exclusive jurisdiction of the state and federal courts of the State of New York for all disputes or controversies which may arise between the Parties out or in connection with this Agreement or its construction, interpretation, effect, performance or non-performance, or the consequences thereof.  Each Party agrees that such courts, to the exclusion of all other courts, tribunals and administrative bodies, shall have exclusive jurisdiction with respect to any and all such disputes and controversies and that any and all such disputes and controversies shall be determined only by litigation in one of such courts . . .."  The parties also agreed that the agreement and "any dispute or claim arising out of or in connection with it or its subject matter or formation" would be governed by the laws of the State of New York.

On August 1, 2016, Brembo sent a termination notice letter to TAW at its North Carolina address providing that the agreement would terminate in one year's time, on July 31, 2017.  Both parties filed lawsuits in advance of the agreement's termination date.  TAW first filed in New York federal court but then voluntarily dismissed its lawsuit.  In July 2017, Brembo filed a New York state lawsuit seeking damages for TAW's alleged failure to pay for products shipped to TAW

in North Carolina.  TAW filed a counterclaim seeking damages based on Brembo's alleged failure to enforce the agreement's exclusivity provisions against other distributors and its termination of the agreement without explanation.  In its counterclaim, TAW confirmed it had specifically consented to the exclusive jurisdiction of the New York courts for all disputes arising between the parties in connection with the agreement.

In 2018, while Brembo's New York state lawsuit was pending, TAW filed this California lawsuit seeking monetary damages based on Brembo's alleged wrongful termination of the agreement without cause.  In its first amended complaint (FAC), TAW alleged it was a "California limited liability Company, formerly headquartered in Sonoma California, currently located in Cramerton, North Carolina with offices in Sonoma, California" and that "Richard Martin is the principal and controlling member of [TAW].  He is a United Kingdom citizen and non-immigrant alien, living in the United States pursuant to a valid E-2 Visa, who at all relevant times has been residing in Sonoma, California."  TAW further alleged Brembo was "an Italian corporation located in Italy that does business in the State of California by and through subsidiaries and California based distributors."

The FAC included causes of action for breach of contract and violations of California's Franchise Relations Act (Bus. & Prof. Code § 20001(a)-(c)) (Franchise Act).  As to the Franchise Act, TAW alleged the parties' agreement met the elements of a franchise agreement, and Brembo's termination violated the Franchise Act as: (a) no franchisor may terminate a franchise prior to the expiration of its term except for good cause; and (b) "any condition, stipulation or provision purporting

3

to bind any person to waive compliance with any provision" of the franchise law "is contrary to public policy and void." According to TAW, Brembo's termination of the agreement pursuant to its provision allowing for unilateral termination upon one-year's notice did not constitute good cause for termination under the Franchise Act.

## II. THE MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION WAS PROPERLY GRANTED

### A. *The Motion to Quash Service*

Brembo moved to quash service of summons on the ground it did not have sufficient contacts with California for the court to exercise either general or specific jurisdiction.

Relying on a declaration of its in-house chief legal and corporate affairs officer, Umberto Simonelli, Brembo asserted the court had no basis to exercise general jurisdiction for the following reasons: Brembo was an Italian corporation with its principal place of business and corporate headquarters in Italy; it was not authorized to do business in California; it maintained no offices in California; no current employees resided in California; it had no assets in California; and it paid no taxes in California. Additionally, Brembo designed and manufactured self-branded design equipment for motorcycles and motor vehicles in Italy; it did not manufacture any equipment in California; it did not sell products to the general public in California but instead sold equipment to distributors; it did not maintain a dealer network in California; and it did not engage in marketing efforts directed at California. Brembo had one United States subsidiary, Brembo North America, Inc., which was a distinct and separate entity, incorporated in Delaware with a principal place of business in Plymouth, Michigan.

4

Brembo further asserted the court had no basis to exercise specific jurisdiction for numerous reasons, including that TAW had moved its principal place of business to North Carolina prior to entering into the agreement and Brembo's act of contracting with a California entity was not sufficient to support specific jurisdiction. TAW's contacts with California were likewise insufficient as all purchase orders were sent by TAW to Brembo in Italy and Brembo did not ship any products to TAW in California. Further, the parties agreed New York was to be the exclusive forum for dispute resolution and never looked to California as shown by TAW's earlier dismissed federal lawsuit and its counterclaim filed in Brembo's pending New York state lawsuit.

In opposition, TAW asserted it did not need to establish general jurisdiction over Brembo because TAW could "easily" establish Brembo had "minimum contacts" to support specific jurisdiction since it had entered into an agreement with TAW (a California resident) to resell its products in California, and TAW now claimed damages based on Brembo's breach of that agreement. Relying on a declaration from its managing member Richard Martin, TAW also asserted Brembo had "many" other contacts with California supporting an exercise of specific jurisdiction: (1) Brembo purposefully directed its activities at California by creating a continuing obligation between itself and a California resident to resell large amounts of its products in California, over many years; (2) TAW had sold more than $2.7 million of Brembo's products in California over the past three years; (3) California accounted for 28.7 percent of TAW's sales of Brembo's products in the United States; (4) before TAW moved to North Carolina, Brembo shipped its products

directly to California, handled warranties in California, and directly marketed its products in California; (5) TAW's California lawsuit arose out of Brembo's forum-related activities, namely, Brembo's wrongful termination of the 2014 agreement, which out-of-state forum selection clause was expressly void under the Franchise Act.

In reply, Brembo noted TAW conceded Brembo was not subject to general jurisdiction by failing to make any argument in support of that basis for jurisdiction. Brembo further asserted that evidence of certain events that preceded the 2014 agreement or that occurred after Brembo's alleged breach of the 2014 agreement, and its general activities in California, were not related to the wrongful termination claim and therefore could not support specific jurisdiction.

On March 28, 2019, the court granted Brembo's motion to quash service as TAW had not met its burden of demonstrating that Brembo had a sufficient nexus with California to support personal jurisdiction. In so concluding, the court explained that TAW conceded there was no general jurisdiction. As to specific jurisdiction, the court found TAW failed to satisfy its burden to demonstrate Brembo's contacts with California for a variety of reasons that fundamentally boiled down to the agreement being between "a company doing business in Italy, and one doing business in North Carolina, who had agreed to settle any claims per New York law" and TAW's failure to demonstrate Brembo had any special connection with California that would support the exercise of jurisdiction over Brembo.

In light of its determination that Brembo was not subject to specific jurisdiction, the trial court did not address whether the exercise of personal jurisdiction over Brembo would be reasonable. Nor did the

6

court address Brembo's request to either stay or dismiss the action on the ground that California is an inconvenient forum for the action.

TAW timely appealed the March 28 order.

## B. *Guiding Principles*

Under Code of Civil Procedure section 410.10, our courts are authorized "to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. 'The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " ' " (*Halyard Health, Inc.* v. *Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1069 (*Halyard Health*), quoting in part *Walden v. Fiore* (2014) 571 U.S. 277, 283; *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; *Milliken v. Meyer* (1940) 311 U.S. 457, 463.) "Personal jurisdiction may be either general or specific." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).)

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] When there is conflicting evidence, the trial court's factual

7

determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons, supra,* 14 Cal.4th at p. 449.)

## C.    *General Jurisdiction*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State. [Citation.]" (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 919 (*Goodyear*).)

In *Daimler AG v. Bauman* (2014) 571 U.S. 117 (*Daimler*), the high court explained that "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction there" (*id.* at p. 137), and "for a corporation, . . . the place of incorporation and principal place of business [are the] 'paradig[m] . . . bases for general jurisdiction' " (*ibid*). In other words, "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.' " (*Daimler*, *supra*, 571 U.S. at pp. 138-139, fn. omitted, quoting *Goodyear*, *supra*, 564 U.S. at p. 919.)

Our de novo review is limited to issues which have been adequately raised and supported in the trial court and in TAW's briefs. Neither in the trial court nor on appeal does TAW make any attempt,

8

by substantive argument or evidence, to demonstrate that Brembo was subject to general jurisdiction based on such continuous or systematic affiliations with California so as to render it essentially at home in California. And, indeed, no such argument could be made on this record as the common bases for general jurisdiction over Brembo do not exist: at all relevant times, Brembo was a joint stock company incorporated in Italy with its principal place of business in Italy and its North American subsidiary was a corporation incorporated in Delaware with its principal place of business in Plymouth, Michigan.

## D. *Specific Jurisdiction*

In contrast to general jurisdiction, specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. [Citations.] In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.' [Citation.]" (*Goodyear, supra,* 564 U.S. at p. 919.) In other words, "[w]hen determining whether specific jurisdiction exists, courts consider the ' " 'relationship among the defendant, the forum, and the litigation.' " ' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*), quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 414 (*Helicopteros*), quoting *Shaffer v. Heitner* (1977) 433 U.S. 186, 204 (*Shaffer*).)

Thus, "[a] court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of the forum benefits' (*Vons*, *supra*, 14

9

Cal.4th at p. 446); (2) 'the "controversy is related to or 'arises out of' [t]he defendant's contacts with the forum" ' (*ibid*., quoting *Helicopteros, supra*, 466 U.S. at p. 414); and (3) ' "the assertion of personal jurisdiction would [be reasonable in that it would] comport with 'fair play and substantial justice.' " ' (*Vons, supra*, 14 Cal.4th at p. 447, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472-473 [85 L.Ed. 528, 105 S. Ct. 2174] (*Burger King*))." (*Pavlovich, supra,* 29 Cal.4th p. 269.)

In addressing the purposeful availment prong, the high court has explained that, under the Due Process Clause, individuals are entitled to a " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' " thereby giving potential defendants the ability " 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " (*Burger King, supra*, 471 U.S. at p. 472, quoting *Shaffer, supra*, 433 U.S. at p. 218 (Stevens. J., concurring in judgment) & *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297 (*World-Wide Volkswagen*).) "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, [citation], and the litigation results from alleged injuries that 'arise out of or relate to' those activities, [citation]." (*Burger King, supra*, at pp. 472-473, fns. omitted.) By " 'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,' [citation], [a defendant] has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance,

10

passing the expected costs on to customers, or, if the risks are too great, severing its connection with State. " (*World-Wide Volkswagen*, *supra*, at p. 297.)

"In defining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation, [the high court] frequently has drawn from the reasoning of *Hanson v. Denckla* [(1958) 357 U.S. 235, 253 (*Hanson*)]: 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " (*Burger King*, *supra*, 471 U.S. at p. 474.)

### 1.  *TAW's Contentions*

TAW argues that its jurisdictional arguments are supported by either (1) facts that were not challenged in the trial court, (2) facts to which the court overruled Brembo's evidentiary objections, and (3) facts to which the court "simply erred in its application of law by refusing to consider an otherwise sound fact based solely on relevance."

In reviewing the trial court's ruling, we need not separately address TAW's specific challenges to the court's reasons for its ruling as a trial court's ruling must be affirmed even if " 'given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)  Our analysis " 'is not susceptible of

11

mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present' " (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*), and " ' "[t]his determination is one in which few answers will be written 'in black and white, [with] [t]he greys . . . dominant and even among them the shades are innumerable' " ' " (*Pavlovich, supra,* 29 Cal.4th at p. 268, quoting *Kulko v. California Superior Court* (1978) 436 U.S. 84, 92, quoting *Estin v. Estin* (1948) 334 U.S. 541, 545).

With these considerations in mind, we now address TAW's contentions.

### 2. *Analysis*

In ascertaining whether specific jurisdiction may be exercised over a foreign corporation in commercial contract litigation, we are guided by high court decisions which "long ago rejected the notion that personal jurisdiction might turn . . . on 'conceptualistic . . . theories of the place of contracting or of performance.' [Citation.]  Instead, [the high court . . . [applies] a 'highly realistic' approach that recognizes that a 'contract' is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.  [Citation.]" (*Burger King, supra,* 471 U.S. at pp. 478-479, and the cases cited therein.)  Pertinent to the matter before us, the *Burger King* court specifically found that a choice of law provision by which the parties stipulated "in advance to submit their controversies for resolution" in a specific jurisdiction may be germane to the jurisdictional analysis.  (*Id.* at p. 472, fn. 14; see *Id.* at pp. 482-483 [*Burger King* court admonished Court of Appeals for

failure to give adequate consideration to choice of law provision in parties' franchise agreement in determining question of personal jurisdiction over defendant franchisee].)

TAW argues Brembo should have anticipated being brought into a California court to defend this lawsuit based on the following "key relevant" factors: (1) Brembo profited from TAW's resale of Brembo products in California, which accounted for almost one-third of TAW's United States sales, as an expected and foreseeable consequence of the agreement; (2) Brembo knew it was entering into an agreement with a California entity; (3) Brembo negotiated with the managing member of TAW and TAW's attorney, who were both located in California; (4) Brembo knowingly and expressly transacted millions of dollars of business with a California entity; (5) Brembo maintained regular communication with TAW staff and management in California; (6) Brembo clearly targeted the California market by (a) appointing TAW as the exclusive distributor for Brembo products in California; (b) marketing its products in California through its interactive website and trade shows; (c) making direct sales to customers in California with an obligation under the agreement to reimburse TAW for those sales; and (d) issuing warranties for its products purchased by California customers and thereby creating continuing obligations to thousands of California residents; and (7) the bulk of harm to TAW will be felt in California which accounts for TAW's largest United States sales of Brembo's products.

We agree with the trial court that the record does not show that Brembo purposefully availed itself of the benefits and protections of the laws of California such that it had "fair warning" and should have

13

anticipated being brought into a California court to defend this lawsuit. While the parties had a prior relationship in California, six months before and at the time of the execution of the 2014 agreement the parties' relationship was no longer "California-directed in any meaningful sense." (*Halyard Health*, *supra*, 43 Cal.App.5th at p. 1076.) TAW had moved its principal place of business to North Carolina and the distribution agreement was not limited to California but included the entirety of the United States, Canada, and Mexico. Under the agreement, Brembo shipped its products to TAW's principal place of business in North Carolina. Of particular significance given the 2014 agreement's anticipation of nationwide and international distribution of Brembo products through resales by TAW, Brembo made a commercially reasonable effort "to alleviate the risk of burdensome litigation" in any portion of the designated distribution territory by including choice of law and forum selection clauses limiting the forum in which TAW could file a lawsuit to New York. (*World-Wide Volkswagen, supra*, 444 U.S. at p. 297.)

We see no merit to TAW's assertion that Brembo's shipment of its products to North Carolina is insignificant, compared to where the products were eventually resold by TAW (i.e. California), because pursuant to the Uniform Commercial Code title to the goods passed to TAW in California where TAW was required to pay state excise taxes on the products it resold in the state. As our high court has admonished, we do not look at TAW's contacts with California, but instead limit our analysis to an evaluation of Brembo's contacts with the state. Even assuming title to the goods passed to TAW in California, we fail to see how that circumstance demonstrates that

14

Brembo purposefully availed itself of the benefits and protections of the laws of California. Simply put, TAW's unilateral resale of Brembo's products in California is not sufficient to demonstrate that Brembo purposefully availed itself of the privilege of conducting business in California. (*Hanson, supra,* 357 U.S. at p. 253 ["[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"].)

Nor are we persuaded by TAW's assertion that Brembo knew that TAW resold Brembo's products in California for "millions of dollars." While "the foreseeability of causing *injury* in another State should be sufficient to establish" sufficient contacts in that state "when policy considerations so require, . . . this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction. [Citation.] Instead, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' [Citation.]" (*Burger King*, *supra*, 471 U.S. at p. 474, fn. omitted.) Brembo's mere knowledge that TAW would resell Brembo products in California, without Brembo having some significant control over the ultimate distribution of its products, does not "establish purposeful availment under the effects test." (*Pavlovich*, *supra*, 29 Cal.4th at p. 276; see *Ibid.* [" '[t]he fact that a defendant's actions in some way set into motion events which ultimately injured a California resident' cannot, by itself, confer jurisdiction over that defendant"].)

We similarly find no merit to TAW's argument that the agreement's choice-of-law and forum selection clauses are irrelevant. As recognized with approval by the high court, choice-of-law and forum

15

selection provisions are frequently used in commercial contracts as mechanisms allowing " 'potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will or will not render them liable to suit.' " (*Burger King, supra*, 471 U.S. at p. 472 & fn. 14, quoting *World-Wide Volkswagen, supra,* 444 U.S. at p. 297.)  Regarding the relevance of choice-of-law provisions, the *Burger King* court explained that a "choice-of-law *analysis* – which focuses on all elements of a transaction, and not simply on the defendant's conduct – is distinct from minimum-contacts jurisdictional analysis – which focuses at the threshold solely on the defendant's purposeful connection to the forum.  Nothing in our cases, however, suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of the State's law' for jurisdictional purposes." (*Burger King, supra*, 471 U.S. at pp. 481-482; italics in original.)

Choice-of-law and forum selection clauses, "standing alone", are not dispositive, and may be discounted where a foreign corporation's other minimum contacts establish jurisdiction in the forum state.  However, they may "reinforce" whether or not a foreign corporation has made such "a deliberate affiliation with the forum state" as to support a conclusion that it should have reasonably foreseen "possible litigation there." (*Burger King, supra,* 471 U.S. at p. 482; see *ibid*. [*Burger King* court found nonresident defendant franchisee was required to defend against plaintiff franchisor's lawsuit in Florida where, among other things, defendant had " 'purposefully availed himself of the benefits and protections of Florida's laws' by entering into contracts expressly

16

providing that those laws would govern franchise disputes" at issue in lawsuit].)

Here, Brembo's contacts with the United States were already directed away from California before the parties entered into the agreement. TAW had moved its principal place of business to North Carolina, Brembo was shipping its products to North Carolina, and TAW's resale of Brembo's products was expanded to include the entirety of the United States, Canada, and Mexico. Given these circumstances, Brembo made a concerted effort to "alleviate the risk of burdensome litigation" (*World-Wide Volkswagen*, *supra*, 444 U.S. at p. 297) by limiting dispute resolution to New York. The agreement's choice of law and forum selection clauses reinforces our finding that Brembo did not have fair warning and could not have reasonably anticipated being brought into a California court to defend against TAW's lawsuit concerning the termination of the agreement. To conclude otherwise would appear to conflict with the high court's admonishment that a state should not interfere with a foreign corporation's reasonable efforts " ' to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " (*Daimler*, *supra*, 571 U.S. at p. 139, quoting in part *Burger King*, *supra*, 471 U.S. at p. 472; see also *Halyard Health*, *supra*, 43 Cal.App.5th at p. 1076 [appellate court rejected plaintiff's argument that parties' execution of distribution agreement was "California-directed" where, among other factors, parties' choice of law selection reflected "a deliberate affiliation" with both parties' state of incorporation (Delaware), and not California].)

17

We also see no merit to TAW's reliance on the fact that its lawsuit is premised on a violation of the Franchise Act. In *Shaffer*, *supra*, 433 U.S. 186, the high court specifically rejected the plaintiff's assertion that "if a State's law can properly be applied to a dispute, its courts necessarily have jurisdiction over the parties to that dispute." (*Id.* at p. 215.) In other words, even if a forum state's law governs the obligations of a defendant, such a finding "does not demonstrate that [the defendant has] 'purposefully avail[ed itself] of the privilege of conducting activities within the forum State,' . . . in a way that would justify bringing [it] before" the forum state. (*Id.* at p. 216.) Whether or not the enforceability of the parties' 2014 agreement is governed by California law "has nothing to do with whether enforceability may be determined by a California court. The required relationship among [Brembo, California, and this lawsuit] cannot be based on what [TAW's] argument assumes, i.e. that California substantive law applies." (*Halyard Health*, *supra*, 43 Cal.App.5th at p. 1072, fn. 7 [*Halyard Health* court found that plaintiff's assumption that California law would apply "is not one that leaps off the pages" of the contract in which the parties agreed that the contract " 'shall be governed by and construed and enforced in accordance with the substantive laws of the State of Delaware and the federal laws of the United States of America applicable therein, as though all acts and omissions related hereto occurred in Delaware' "].)

Lastly, we are not persuaded by TAW's assertions that the trial court abused its discretion by refusing to consider Brembo's direct sales, marketing, advertising, and issuance of warranties for its products that were resold by TAW to California consumers as relevant

18

factors. Such evidence would not be relevant, let alone material, to the subject of this lawsuit, Brembo's alleged wrongful termination of the agreement. The controversy therefore lacks any substantial connection to Brembo's purported contacts with California through its direct sales, marketing and advertising activities and its issuance of warranties for its products sold in California. (Cf. *Snowney*, *supra*, 35 Cal.4th p. 1070 [plaintiff who filed lawsuit based on defendant hotels' failure to provide notice of energy surcharges during reservation process and in their advertising met the relatedness requirement as "the injury allegedly suffered by plaintiff in this case relates *directly* to the content of defendants' advertising in California;" italics in original].) The fact that TAW resold Brembo products in California for millions of dollars and therefore the termination could have an effect on TAW in California "does not establish the requisite connection between [Brembo,] this forum and the specific claim[ ] at issue in this suit. [Citation.]" (*Halyard Health*, *supra*, 43 Cal.App.5th at p. 1073; see *Id.* at p. 1069 [specific jurisdiction not demonstrated where, among other factors, defendant foreign corporation's California "sales" in the millions were not sufficiently connected to the gist of plaintiff's declaratory relief action concerning the meaning and enforceability of an indemnification clause in the parties' agreement].)

In sum, we conclude an affirmance is required because TAW has not shown on this record that Brembo had minimum contacts with California justifying an exercise of either general or specific jurisdiction over it. Accordingly, we do not reach whether an exercise of personal jurisdiction would be reasonable or whether California would be a convenient forum for this lawsuit.

19

III. **TAW'S REQUEST FOR DISCOVERY WAS PROPERLY DENIED**

On March 28, 2019, the trial court also denied TAW's request for discovery (1) to determine Brembo's connection with its North American subsidy, Brembo NA and (2) regarding Brembo's connections with California, including whether Brembo maintains any employees in California. The denial was premised on TAW's concession that there was no basis for general jurisdiction and the requested discovery did not pertain to questions of specific jurisdiction. In other words, TAW had not demonstrated the requisite nexus between the requested discovery and whether it would be proper to subject Brembo to the jurisdiction of the California Court.

We find no merit to TAW's argument that reversal is required because if it had been allowed discovery it would have been likely to ascertain jurisdictional facts to support an exercise of either general or specific jurisdiction. "The granting of a continuance for discovery lies in the discretion of the trial court, whose ruling will not be disturbed in the absent of manifest abuse. [Citation.]" (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487 (*Beckman*).) We find no abuse of discretion.

TAW asserts it could have made a general jurisdiction argument based on information it sought concerning Brembo's relationship with any purported in-state subsidiary, affiliate, or partner, and the presence of its employees in this state. However, TAW's requested discovery "would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' [Citation.] That formulation, . . ., is

20

unacceptably grasping." (*Daimler*, *supra*, 571 U.S. at pp. 137-138; see also *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222-223.) While the high court has recognized that "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" (*Daimler*, *supra*, 571 U.S. p. 139, fn. 19), TAW has failed to demonstrate, "[i]n light of the showings already made," that discovery would "likely lead to production of evidence establishing" general jurisdiction over Brembo. (*Beckman, supra,* 4 Cal.App.4th at p. 487.)

Nor do we see any merit to TAW's argument that the court improperly denied its request for information directed at establishing specific jurisdiction based on Brembo's direct sales, marketing, advertising, and issuance of warranties for its products that were resold by TAW to California consumers. As is clear, the action here is about how the parties intended to or were legally obligated to terminate their agreement prior to its expiration. Evidence of Brembo's purported direct sales, marketing, and advertising in California, and Brembo's issuance of warranties to California consumers who purchased Brembo products, would not be relevant, let alone material, to the subject of this lawsuit, Brembo's alleged wrongful termination of the agreement.

Accordingly, we find no abuse of discretion in the court's denial of discovery. "In light of the showings already made, the court could reasonably conclude further discovery would not likely lead to

21

production of evidence establishing jurisdiction." (*Beckman, supra,* 4 Cal.App.4th p. 487.)

## IV. TAW'S MOTION FOR RECONSIDERATION WAS PROPERLY DENIED

### A. The Motion for Reconsideration

TAW sought reconsideration based on both newly discovered evidence and other evidence already in its possession it inadvertently failed to previously present to the court, in support of its argument that Brembo had mislead the court concerning its contacts with California. TAW submitted declarations from TAW managing member Richard Martin, TAW member Ken Gordon, TAW President Wayne Rogers, and TAW counsel Merrill C. Haber. TAW also submitted the complete transcript of the March 13, 2019, deposition testimony of Brembo's counsel Simonelli, which was first available to TAW after the motion to quash had been argued and submitted on February 27, 2019.

In opposition, Brembo submitted a declaration from its outside counsel Lydia Ferrarese, Herzfeld & Rubin, P.C. Ferrarese participated in the negotiations of the 2014 agreement from her New York office and was representing Brembo in the pending New York state lawsuit against TAW.

On June 28, 2019, the court filed its order denying TAW's request for reconsideration:

> "Here, [TAW] contends that it first discovered 'new' evidence when [Brembo] belatedly produced 4,760 pages of documents in the New York litigation, which was after the hearing on [Brembo's] motion to quash. However, although these documents were purportedly 'new' to [TAW], [it] has not provided a 'satisfactory explanation' for its failure to locate and produce these documents at an earlier time and failed to demonstrate that it could not, with reasonable diligence, have discovered and

22

produced this evidence as part of its opposition to the original motion. . . .

"First, [TAW] contends that of all the 'new' evidence it has obtained, '[m]ost significantly, [Brembo] produced an email chain between it and [TAW's] president, which shows [Brembo] had insisted that all invoices for [Brembo] products sold to [TAW], be billed and sent to [its] offices in Sonoma, California. . . . . However, as the motion concedes, these emails were sent to/from [TAW's] President, Wayne [Rogers], in April 2014, i.e., nearly five years before the motion to quash was filed, and admittedly, these emails have been available to him since that time. In fact, [TAW] acknowledges that the 'invoices and emails discussing invoices were in [its] possession at the time of the motion to quash.' . . . The fact that [TAW] inadvertently overlooked these emails at the time, and did not understand their relevance to the motion, is not a 'satisfactory' reason for not producing them earlier and does not demonstrate that the evidence could not, with reasonable diligence, have been discovered and produced in opposition to the motion to quash. Further, [TAW] concedes that these emails 'predate the Agreement at issue in this case' and thus, even if they were 'new,' they have limited relevance to the motion to quash.

"Second, [TAW] attaches various invoices which purportedly show a billing address for [TAW] in California. . . . As with the emails, the invoices, which show that the products were shipped to North Carolina but billed to California, have been available to [TAW] since long before [Brembo's] motion to quash and [TAW] has not stated a 'satisfactory' reason they weren't discovered or presented earlier. Thus, the invoices are not 'new' evidence.

"Third, [TAW] cites to the deposition testimony from [Brembo's] chief in-house counsel and contends that the testimony was 'extremely evasive' and 'call[s] into question all of [his] testimony submitted in the motion to quash . . . [and] . . . should preclude [Brembo] from now arguing that [TAW] should have located the evidence sooner.'. . . However, [TAW's] focus on the testimony of [Brembo's] in-house counsel is not helpful here and does not support [TAW's] burden to show that the 'new' information could not, with reasonable diligence, have been discovered or produced

23

earlier. Additionally, it appears that [TAW] merely attaches the entire 265 page transcript from the deposition but does not cite any specific testimony and thus, the 'new' evidence has limited value. Finally, as [Brembo] points out in its opposition, [TAW's] characteristics of the testimony as 'false' and 'misleading' is itself somewhat misleading when the specific testimony is put in context with the actual question and actual response.

"Fourth, [TAW] relies on emails between [Brembo] and [TAW's] West-Coast sales representative, Ms. Sterley, which purportedly demonstrates that [Brembo] had 'ongoing and frequent connection and communication with Ms. Sterley here in California.' . . . However, as with the previously discussed emails, [TAW's] President, Wayne [Rogers], is copied on the emails from Ms. Sterley and thus, [TAW] has had access to these emails since they were sent in 2014. Therefore, they are not 'new' and [TAW] could have discovered these emails with 'reasonable diligence.' Additionally, these emails, some of which are in Italian, do not show any meaningful connection with California, other than the fact that Ms. Sterley's office was apparently located there.

"Fifth, [TAW] cites to [Brembo's] internal emails that were allegedly not previously available to [TAW] and which purportedly show [Brembo] 'organized and paid for advertising' in California. . . . However, these emails are incomplete, inadmissible, and do not show any connection between [Brembo] and California that is relevant to this case.

"Finally, [TAW] relies on 'warranty documents' which purportedly demonstrate that [Brembo] 'directly warrantied its products that were sold by [TAW] to its customers here in California, thus creating an affiliation between the forum and the underlying controversy . . . .' . . . These 'warranties,' which are largely illegible, irrelevant and inadmissible, do not appear to show any direct connection to products sold in California."

TAW filed timely notices of appeal from (1) the March 28, 2019 order granting Brembo's motion to quash service of summons, and (2) the June 28, 2019 order denying both TAW's motion for reconsideration

24

(Code Civ. Proc. § 1008, subd. (a)), and its alternative motion to vacate the March 28, 2019 order (Code Civ. Proc. § 473, subd. (b)).

We dismiss the separate appeal from the June 28, 2019 order as no separate appeal lies from an order denying reconsideration. (Code Civ. Proc. § 1008, subd. (g) [the order denying reconsideration is reviewed on appeal from the underlying order].) Further, TAW abandoned any review of the denial of its motion for relief under Code of Civil Procedure section 473, subdivision (b), by failing to present any specific argument addressing the issue in its appellate briefs. (See *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519 [appellate " 'review is limited to issues which have been adequately raised and briefed' "].)

## B.    Analysis

TAW contends the court, on reconsideration, should have accepted its "reasonable explanations for why the facts were not presented earlier." It further contends the new and different facts demonstrated Brembo had sufficient minimum contacts for an exercise of personal jurisdiction.

We review the denial of a motion for reconsideration under the deferential abuse of discretion standard and must "uphold it even if we might have ruled otherwise in the first instance." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 686.) In other words, we will reverse only if we can conclude TAW's showing compelled a grant of reconsideration as a matter of law. We cannot so conclude here.

We find the court acted well within its discretion in finding that reconsideration was not warranted based on TAW's production of additional evidence (emails, invoices, product warranties, and the

25

deposition testimony of Brembo's in-house counsel) for the reasons stated in the court's order. (See, e.g., *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 81 [reconsideration not warranted as appellant's explanation that she did not understand the import of a letter in her possession was not a satisfactory excuse for failing to submit the letter earlier]; *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 692-693, fn. 6 [appellant's failure to present evidence in its possession because it "did not think the evidence was necessary" was "patently insufficient" to warrant reconsideration], disapproved on other grounds in *Equilon Enterprises LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

Citing to *Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338 (*Mink*), TAW argues that reconsideration was required because the parties did not inform the court that Brembo continued to use a California address for TAW on its invoices for products shipped to North Carolina even though TAW moved its principal place of business to North Carolina. According to TAW, Brembo's use of the California address was an act demonstrating "Brembo desired to maintain its nexus with TAW as a California entity." However, Brembo explained that after TAW moved its principal place of business to North Carolina, Brembo adopted an email invoice system and sent its invoices by email to TAW's chief financial officer (CFO) located in North Carolina. We see nothing that demonstrates Brembo purposefully availed itself of the benefits or the protections of the law of California by using a California address for TAW on its invoices which were sent by email to TAW's CFO in North Carolina. Instead, the existence of the California

26

address on the invoices appears to be a simple holdover that is not relevant, let alone material, to TAW's lawsuit.

The circumstances in *Mink*, *supra*, 2 Cal.App.4th 1338, are not comparable. There, the trial court denied a motion for reconsideration when all parties believed the plaintiffs' claims were barred by the statute of limitations, but plaintiffs discovered after the ruling that the statute had not run because of an intervening weekend and court holiday. (*Id.* at pp. 1342-1343.) The *Mink* court found the plaintiffs' failure to discover the mutual mistake of fact before the ruling on summary adjudication excusable. (*Ibid.*)

In contrast, in this case "there was no mistake of fact. Instead, there was [a] decision by [TAW's] attorney not to collect evidence he thought unnecessary" to oppose the motion to quash service of the summons. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 214 (*New York Times*).) We are not persuaded by TAW's argument that the court's decision in *New York Times* is meaningless because "[t]his is clearly not a case where TAW's attorneys decided not to seek or submit the evidence. Had they had the evidence they would have without doubt submitted it. Indeed, once TAW's attorneys became aware of the emails and invoices, they immediately realized the importance of them and filed the motion to reconsider," thereby providing "a reasonable and satisfactory explanation for why it did not submit the evidence" earlier.

However, the trial court was not required, as a matter of fact or law, to accept TAW's reasons for failing to submit the additional emails and invoices submitted on the motion for reconsideration, particularly in light of the fact that TAW had the initial burden of demonstrating

27

facts justifying the exercise of jurisdiction (*Vons*, *supra*, 14 Cal.4th at p. 449).  By its arguments, TAW essentially attempts to "reargue on appeal those factual issues decided adversely to [it] . . ., contrary to established precepts of appellate review."  (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399.)

## V.    DISPOSITION

The separate appeal from the June 28, 2019 order is dismissed. The March 28, 2019 order granting the motion to quash service of summons and the June 28, 2019 order insofar as it denied the motion for reconsideration are affirmed.  Defendant and respondent Brembo S.p.A. is awarded costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.


*A157400/A157841*

29

Trial Court:       Sonoma County Superior Court

Trial Judge:      Hon. Jennifer V. Dollard

Counsel:          Law Offices of Merrill C. Haber, Merrill C. Haber, Bryan W. Dillon, for Plaintiff and Appellant.

                  Schnader Harrison Segal & Lewis, Stephen H. Dye, Brandy S. Ringer, for Defendant and Respondent.