Filed 3/27/25  Estate of Marsh CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of FRANCES MARSH, Deceased. | |
| _____ | G063140 |
| A. SCOTT KALKWARF, as Personal Representative, etc., | (Super. Ct. No. 30-2020-01147360) |
| Plaintiff and Appellant, | O P I N I O N |
| v. | |
| CHICAGO TITLE INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

Appeal from orders of the Superior Court of Orange County, Donald F. Gaffney, Judge. Affirmed in part and dismissed in part.

Law Offices of Richard A. Lucal and Richard A. Lucal for Plaintiff and Appellant.

Meylan Davitt Jain Arevian & Kim, Vincent J. Davitt and Grace C. Lee; Fidelity National Law Group and David Allen Myers for Defendant and Respondent Chicago Title Insurance Company.

Hahn Loeser & Parks and Michael J. Gleason for Defendant and Respondent Fidelity National Financial, Inc.

*          *          *

Plaintiff The Estate of Frances Marsh (the estate) sued defendant Chicago Title Insurance Company (Chicago Title) for bad faith insurance practices. It later amended its complaint to add Chicago Title's ultimate parent company, Fidelity National Financial, Inc. (Fidelity Inc.) as a defendant. Fidelity Inc. is a holding company that is incorporated in Delaware and has its principal place of business in Florida. It moved to quash service of summons due to lack of personal jurisdiction (the motion to quash). The trial court granted the motion to quash. It also denied the estate's motions to compel Chicago Title to produce certain high-ranking corporate officials for depositions on the estate's jurisdictional theories. The estate appeals the order granting the motion to quash and the orders denying its motions to compel (the motion to compel orders).

As to the trial court's order granting the motion to quash, the estate claims on appeal that Fidelity Inc. is subject to jurisdiction because it was the joint employer of the employees that processed the estate's claim and/or was the alter ego of Chicago Title. As to the former theory, even if the estate could show joint employment by Fidelity Inc., none of the personnel that processed its claim worked in California. Nor has the estate shown that Fidelity Inc. can be subject to personal jurisdiction for jointly employing the out-of-state personnel that reviewed its insurance claim. As to the alter ego theory, the estate has not demonstrated that Chicago Title and Fidelity Inc. share the necessary unity of interest to be treated as a single entity. It has also failed to show that an inequitable result will occur if Chicago Title and

2

Fidelity Inc. are not treated as one entity. Based on the forgoing, we affirm the order granting the motion to quash.

Chicago Title filed a motion to dismiss the portion of the estate's appeal directed at the motion to compel orders. It correctly asserts that discovery orders are generally not appealable (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 647), and the estate has failed to explain why this general rule does not apply here. Since the estate has failed to meet its burden, we grant Chicago Title's motion to dismiss. We also note that even if we were to consider the merits of the estate's argument, we would find the court did not abuse its discretion by denying the motions to compel.

FACTS AND PROCEDURAL HISTORY

*A. This Lawsuit*

Frances Marsh passed away in 2016. Months after her death, the estate was sued by various parties challenging its ownership of certain real property. The estate tendered the defense of this lawsuit to Marsh's title insurer, Chicago Title.

The estate eventually came to believe that Chicago Title had mishandled its title insurance claim. In particular, it was unsatisfied with the representation Chicago Title provided to defend the title challenge. So, in 2020, the estate filed this action against Chicago Title asserting claims for breach of contract, bad faith, unfair business practices, and declaratory relief.

The estate amended its complaint several times. In September 2022, it filed a Doe amendment to the third amended complaint naming Fidelity Inc. as a defendant. Fidelity Inc. responded by filing the motion to quash. While the motion to quash was pending, the estate filed a fourth amended complaint against Chicago Title and Fidelity Inc. The fourth amended complaint asserted claims for bad faith and unfair business

3

practices against Fidelity Inc. and Chicago Title and breach of contract and declaratory relief claims against Chicago Title. The parties stipulated that the motion to quash would be directed at the fourth amended complaint.

The fourth amended complaint contained several paragraphs appearing to explain why jurisdiction over Fidelity Inc. was warranted. Its first few introductory paragraphs alleged that Fidelity Inc. also did business as Fidelity National Title Group (Fidelity Title). These paragraphs also claimed that Chicago Title is owned and controlled by Fidelity Title (not Fidelity Inc.). After these introductory paragraphs, the fourth amended complaint conflated Fidelity Title and Fidelity Inc., defining them jointly as "Fidelity National." The fourth amended complaint then alleged that Fidelity National (1) used a subsidiary to "employ[] and control[] all of the individuals involved in the processing" the estate's insurance claim; (2) provided the handbook use to process the claim and was involved in claims decisions; (3) stored records concerning Marsh's claim; and (4) marketed title insurance and escrow services on its website.

B. *The Motion to Quash*

The motion to quash was supported by declarations from Jacob Ancona (the Ancona declaration) and Sydney Sefick (the Sefick declaration). Ancona was a litigation support manager and counsel for Fidelity Inc. He averred that Fidelity Inc. was a publicly traded company organized under Delaware law with corporate headquarters in Florida. It did not have offices or employees in California, did not own or lease property in California, was not registered to do business in California, did not engage in any business activity in California, and did not market title insurance escrow services in California through the Internet or other means. Ancona explained, Fidelity

4

Inc. "is merely a holding company. . . . [whose] sole function is to own stock of its wholly owned subsidiaries."

Ancona clarified that Fidelity Inc. "does not do business as [Fidelity Title]." Rather, "[Fidelity Title] is a wholly owned subsidiary of FNTG Holdings, LLC ('Holdings'), and Holdings is a wholly owned subsidiary of [Fidelity Inc]. [Fidelity Inc.] and [Fidelity Title] are separate companies with separate assets, are separately incorporated, have their own unique tax identification numbers, have their own corporate books and records, and have their own directors and officers. Neither [Fidelity Inc.] nor [Fidelity Title] actively engages in any business activities, in California or otherwise." Ancona also declared that Fidelity Title had no offices or employees in California. Instead, Fidelity Title "is a holding company which owns various title insurance underwriters (including [Chicago Title]) . . . . None of [Fidelity Title's] direct subsidiaries are organized pursuant to California law. None of [Fidelity Title's] direct subsidiaries has its principal place of business in California."

Finally, Ancona stated that Fidelity Title's subsidiaries shared two national claim centers in Florida and Nebraska. "None of the claims personnel involved in the administration of [the estate's] title insurance claim at issue in this litigation (or any other title insurance claim) is employed by [Fidelity Inc.] or [Fidelity Title] nor were such personnel ever officers or directors of [Fidelity Inc.] or [Fidelity Title]. Neither [Fidelity Inc.] nor [Fidelity Title] actively engages in any business activities."

Sefick was the "Vice-President and Senior Claims Counsel for Chicago Title." She was responsible for handling the estate's title insurance claim. Sefick explained that she was not an officer or employee of Fidelity Inc. She also stated that Fidelity Inc. did not control Chicago Title and was

5

not involved with processing the estate's claim or with any coverage decisions. She did not communicate with anyone at Fidelity Inc. concerning the estate's claim, nor did anyone at Fidelity Inc. review correspondence between her and the estate's appointed counsel in the title dispute.

The estate's opposition to the motion to quash asserted personal jurisdiction over Fidelity Inc. was proper because (1) it jointly employed the personnel that processed the estate's claim, and (2) it was the alter ego of Chicago Title. Along with its opposition, the estate requested judicial notice of nine documents: (1) documents from a case called *Albarracin v. FNF* (Super.Ct. Los Angeles, No. BC642922) (the *Albarracin* documents); (2) printouts from the webpages of the Florida and Nebraska Bar concerning Sefick and another attorney, Blair Hedges, that worked on the estate's claims; (3) a previously-submitted declaration of Ancona filed by Chicago Title in 2020; and (4) various printouts and press releases from Fidelity Inc. and Fidelity Title's respective websites. The estate also filed objections to the Ancona and Sefick declarations.

C. *Hearing on the Motion to Quash*

The hearing on the motion to quash was initially set for January 24, 2023. After the estate filed the fourth amended complaint, the parties stipulated to move the hearing to March 8, 2023.

At the March 8, 2023 hearing, the court found that the estate had not met its burden of showing either general or specific jurisdiction over Fidelity Inc. But it continued the hearing until June 14, 2023, so the estate could conduct jurisdictional discovery. In particular, the court noted that the estate had not been able to take a deposition of a person most qualified (PMQ) from Fidelity Inc. concerning jurisdiction. It ordered the PMQ deposition to be completed within 30 days.

6

The estate and Fidelity Inc. were unable to timely schedule a PMQ deposition. Generally, the parties could not agree on right person to sit for the PMQ deposition or the scope of documents that Fidelity Inc. would produce. While Fidelity Inc. offered to produce a PMQ, the estate wanted to depose higher level executives. Due to the impasse, the estate moved ex parte to continue the June 14, 2023 hearing date. The court granted the estate's motion and rescheduled the hearing to September 6, 2023.

Following the court's ex parte ruling, the parties were still unable to agree on a PMQ witness. So, the estate noticed the depositions of Melissa Circelli and Gary Urquhart, whom it believed to be officers of Chicago Title and members of Fidelity Inc. and Fidelity Title's executive team. Fidelity Inc. and Chicago Title refused to produce either person. This caused the estate to file motions to compel Chicago Title, not Fidelity Inc., to produce them for deposition (the motions to compel).

The hearing on the motion to compel Gary Urquhart's deposition was held on September 6, 2023, the same day as the hearing on the motion to quash. The hearing to compel Circelli's deposition was held the next week.

*D. Rulings on the Motion to Quash and the Motions to Compel*

Following the September 6, 2023 hearing, the court overruled the estate's objections to the Ancona and Sefick declarations. It granted the estate's request for judicial notice as to the *Albarracin* documents but denied the requests for the remaining eight documents. The court explained that "[t]he webpages do not consist entirely of facts 'that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.'" (Quoting Evid. Code, § 452, subd. (h).) The court then granted the motion to quash and denied the estate's motion to compel Urquhart's deposition.

7

As to the motion to quash, the court was unpersuaded by the estate's claim that Chicago Title was the alter ego of Fidelity Inc. It found insufficient evidence that Chicago Title was the same entity as Fidelity Inc. In particular, it noted "[t]hat some individuals that work for [Chicago Title] are evidently employed by an affiliated management company that is also a subsidiary of [Fidelity Inc.] does not necessarily confer personal jurisdiction over [Fidelity Inc]." It further explained that the estate had "also not shown that an inequitable result would follow if [Fidelity Inc.] is not treated as [Chicago Title's] alter ego. [The estate] provides no evidence of [Chicago Title's] inadequate capitalization."

The trial court also rejected the estate's claim that Fidelity Inc. was subject to jurisdiction because it jointly employed the personnel that processed the estate's insurance claim. It explained that "[e]ven if [the estate] offered sufficient evidence of this, [the estate] does not establish that a 'joint employer' is subject to personal jurisdiction in California."

As to the motion to compel Urquhart's deposition, the court denied it under the apex doctrine.[1] First, the court found Urquhart was at the apex of Chicago Title's corporate hierarchy. Next, it found the estate had failed to show Urquhart had personal knowledge of the facts at issue in this lawsuit. Nor had the estate exhausted less intrusive discovery methods. For example, it "declined to take the deposition of a [PMQ] for [Fidelity Inc.] and

---

[1] The apex doctrine bars a party from deposing "a corporate president, or corporate officer at the apex of the corporate hierarchy, absent a reasonable indication of the officer's personal knowledge of the case and absent exhaustion of less intrusive discovery methods." (*Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1287.)

[Chicago Title]." The next week, the court denied the estate's motion to compel Circelli's deposition for the same reasons.

The estate appeals the trial court's orders granting the motion to quash and denying the motions to compel. The estate argues the court erred by (1) overruling its objections to the Ancona declaration; (2) denying its request for judicial notice as to all documents except the *Albarracin* documents; (3) finding Fidelity Inc. was not subject to personal jurisdiction; and (4) precluding it from taking the Circelli and Urquhart depositions.

Chicago Title has moved to dismiss the portion of the estate's appeal directed at the motion to compel orders. We first discuss the appeal of the motion to quash and then address Chicago Title's motion to dismiss.

## DISCUSSION

### I.

### THE MOTION TO QUASH

Before reviewing the estate's assertions, we address Fidelity Inc.'s argument that the estate's opening brief fails to comply with the California Rules of Court. The rules require appellate briefs to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument . . . ." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "When a party fails to place an argument under a proper heading or subheading, we need not consider the issue." (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323.)

We agree that the estate has failed to follow this rule. Its brief lists four issues for appeal, which are the four arguments listed above. But it fails to list all these issues under separate headings. The estate's judicial notice argument does not have its own heading but briefly appears in a section entitled "Procedural Background."

9

Further, the estate argues that Fidelity Inc. is subject to either general or specific jurisdiction. Though these are distinct theories, the estate's opening brief does not contain separate sections for general and separate jurisdiction. Indeed, the estate does not even address these two concepts separately. Rather, it makes a single argument containing a deluge of citations to the record, then contends these facts are sufficient to establish either form of jurisdiction. These organizational issues are exacerbated by the fact that the estate's citations appear to include evidence that the trial court did not consider, specifically, webpages for which the court denied judicial notice.

The combination of the above issues has made the estate's briefs difficult to parse. Nonetheless, in the interests of justice, we have done our best to decipher them and address its arguments.

A. *Evidentiary Issues*

The estate contends the court erred by denying judicial notice of all the requested documents, except for the *Albarracin* documents, and overruling its objections to the Ancona declaration. It has failed to show any error.

As to the requests for judicial notice, the estate claims the trial court erroneously denied judicial notice of eight different documents, but it does not explain why any of these documents was subject to judicial notice. Nor does the estate cite any authority in support of its argument. Indeed, it fails to even identify the subdivision of Evidence Code section 452 that would have allowed the court to take judicial notice of these documents. We will not develop this argument for the estate. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

10

In its reply brief, the estate argues "[t]here [was] no need for a request for judicial notice" of these documents because they were authenticated by the declaration of the estate's counsel. But it was the estate who attempted to submit this evidence through judicial notice. If it had an alternative method of submitting the evidence, it should have done so below. (See *Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 914 [a party generally cannot adopt a new theory on appeal].) Further, the trial court appears to have rejected this argument as to the webpage printouts. Its order states, "[The estate's] counsel submits unauthenticated 'printouts' from a prior version of [Fidelity Inc.'s] website. Counsel does not indicate how he obtained these documents or otherwise lay a foundation for them." The estate does not explain how this ruling was incorrect.

Similarly, the estate fails to show how the court erred in overruling its objections to the Ancona declaration. The estate objected to nearly the entire declaration, which spans one-and-a-half pages of text.[2]  On appeal, it simply claims Ancona "laid no proper foundation for his statements, and they were all effectively hearsay. The Court failed to sustain the proper objections raised by [the estate] (orally and in writing)." That is the whole argument.

"It is appellant's 'burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error.'" (*Salas v.*

_____

[2] The only portions of the Ancona declaration to which the estate did not object are (1) its introductory sentences, which state Ancona's position at Fidelity Inc. and that he has personal knowledge of the facts in his declaration, and (2) its final sentence, in which Ancona declares the statements in his declaration are true under penalty of perjury.

11

*Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.) "If a party contends that an evidentiary objection was improperly overruled by the trial court, the party must identify the specific objection, provide legal argument explaining why the trial court's ruling was in error, and support that argument with citation to pertinent legal authority." (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 463.) Arguments that only contain generalities are insufficient to meet this burden. (*Salas*, at p. 1074.) Here, the estate does not explain how any of the specific passages to which it objected lack foundation or constitute hearsay. Rather, the estate's brief asks us to review the declaration ourselves and craft arguments on its behalf. We will not do so. (*Cahill, supra*, 194 Cal.App.4th at p. 956.)

B. *Applicable Law on Personal Jurisdiction*

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).) For defendants not served with process in state, personal jurisdiction is constitutional if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'"" (*Ibid.*) "Personal jurisdiction may be either general or specific" (*id.* at pp. 445–446), which we discuss below.

A defendant may move to quash service of summons for lack of personal jurisdiction. (Code Civ. Proc., § 418.10, subd. (a)(1).) Though the defendant is the moving party, the plaintiff has the initial burden of showing facts "justifying the exercise of jurisdiction in California." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.) If the plaintiff meets this initial burden, "the burden shifts to the defendant to demonstrate that

12

the exercise of jurisdiction would be unreasonable." (*Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th 1447, 1454.)

In reviewing a trial court's jurisdiction determination, we apply the substantial evidence standard to the court's factual findings. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.) Under this standard, we "'view the whole record in a light most favorable to the [order], resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court.'" (*CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 787.) If the underlying facts are undisputed, jurisdiction is a question of law, and our review is de novo. (*Pavlovich*, at p. 273.)

C. *General Jurisdiction*

"General jurisdiction over a corporation exists when that corporation might be 'fairly regarded as at home' in that state." (*Brue v. Shabaab* (2020) 54 Cal.App.5th 578, 590.) To establish general jurisdiction, the corporation's contacts must be "'substantial . . . continuous and systematic.' [Citations.] In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' [Citations.] Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons*, *supra*, 14 Cal.4th at pp. 445–446.)

"Traditionally, a corporation is 'at home' in its place of incorporation and its principal place of business. [Citation.] But in an exceptional case a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that state. [Citation.] To test that possibility, courts look to a variety of factors,

13

including maintenance of offices, the presence of employees, use of bank accounts and marketing or selling products in the forum state, to analyze whether a corporation's contacts render it effectively at home in that state." (*Brue v. Shabaab*, *supra*, 54 Cal.App.5th at pp. 590–591.)

Fidelity Inc. does not have the required contacts to be subject to general jurisdiction in California. It is not incorporated in California, nor is its principal place of business in California. It has no offices or employees in California, nor is it registered to do business in California. It does not market title insurance or escrow services in California.

The estate appears to argue that Fidelity Inc. should be subject to general jurisdiction because it jointly employed the personnel that handled the estate's claim and operated the claims processing centers where its claim was sent. This argument is meritless. Even if Fidelity Inc. employed the staff that handled the estate's claim, the estate has not shown that any of these employees are located in California. Rather, the record shows the claims processing personnel and the claims processing centers are located in Nebraska and Florida. Indeed, the estate's opening brief acknowledges its claim was processed in Nebraska.

In *Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1065, about 350 of the defendant's 42,000 employees worked in California, and about six percent of its global net sales were from California. Despite these connections, the appellate court stated, "It is obvious California courts do not have general jurisdiction over [the defendant] . . . ." (*Id*. at p. 1070.) Here, Fidelity Inc.'s contacts with California are far more attenuated than the defendant in *Halyard Health*. It does not have any employees or offices in California, nor does it sell products or

services in California. Thus, we cannot find Fidelity Inc. is subject to general jurisdiction in California.

## D. Specific Jurisdiction

If a nonresident defendant is not subject to general jurisdiction, "he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits [citation], and the 'controversy is related to or "arises out of" a defendant's contacts with the forum.'" (*Vons*, *supra*, 14 Cal.4th at p. 446.) "'[W]hen a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," [citation] it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state.'" (*Id*. at pp. 446–447.)

The estate primarily argues specific jurisdiction is proper because Fidelity Inc. is the joint employer of the staff that processed the estate's claim and/or is the alter ego of Chicago Title. It also appears to suggest that Fidelity Inc. is subject to jurisdiction because it has acquiesced to jurisdiction in other California cases and is liable under California law. We are not persuaded by any of these theories.[3]

### 1. Joint employment

The estate claims Fidelity Inc. has set up a payroll subsidiary company, FNMS Management Services, Inc. (FNMS), which employs the key

---

[3] The estate's arguments partially rely on webpage printouts and an earlier declaration from Ancona filed in this case in 2020. The trial court denied judicial notice of these documents. Since the estate has not shown any error in this ruling, we will not consider this evidence.

personnel that processed the estate's claim. It claims Fidelity Inc. and FNMS are joint employers of these personnel.

To begin, there is sufficient evidence that the employees that processed the estate's claim were not employees of Fidelity Inc. The Ancona declaration states none of the personnel involved in processing the estate's claim were employed by Fidelity Inc. Likewise, the Sefick declaration stated that Fidelity Inc. did not control Chicago Title, nor was it involved in the processing of the estate's title insurance claim or the coverage decisions. The trial court could have reasonably found that Fidelity Inc. did not employ the relevant personnel based on this evidence.

Moreover, as the trial court noted, even if the estate was able to show these employees were jointly employed by Fidelity Inc., it has "not establish[ed] that a 'joint employer' is subject to personal jurisdiction in California." This finding is supported by case law. For example, *F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 801, explained that joint employment, shared services, and referring to affiliated companies singularly "are typical and actually expected of affiliated or wholly owned companies." As such, these facts are insufficient to establish jurisdiction. (*Ibid.*) Several district courts have reached similar conclusions. (See, e.g., *Kalter v. Keyfactor, Inc.* (S.D.Cal., Mar. 4, 2022) 2022 WL 658976, at p. *3, fn. 3 [explaining liability under joint employer doctrine is a distinct issue from personal jurisdiction]; *Campanelli v. Image First Uniform Rental Service, Inc.* (N.D.Cal., Sept. 12, 2016) 2016 WL 4729173, at p. *7 [liability of a nonresident defendant under a joint employer theory did not establish personal jurisdiction]; *Rashidi v. Veritiss, LLC* (C.D.Cal., Sept. 19, 2016) 2016 WL 5219448, at pp. *11-*12 ["joint employment [alone] does *not* determine personal jurisdiction"].)

16

The estate offers a tepid response to this authority. It claims these cases do "not apply to the primary joint employer who exercises total control over the work environment and the performance of work related to title insurance claims . . . ." But, other than this conclusory statement, it lacks any reasoned explanation as to why the above authority is inapplicable here. In particular, it fails to explain how a "primary joint employer" differs from a typical joint employer relationship in the jurisdictional context. Nor does the estate cite any authority to support its theory that Fidelity Inc. is subject to personal jurisdiction as a joint employer.

The estate does cite case law stating that purposeful availment can be established by "deliberately directing [a] subsidiary's activities in, or having a substantial connection with, the forum state." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1169.) But the evidence it cites only shows that Fidelity Inc. jointly employs FNMS workers located outside of California. The estate has not explained how either FNMS or Fidelity Inc. can be subject to personal jurisdiction in California for employing out-of-state workers that process insurance claims on behalf of other subsidiaries. Even if these employees' decisions harm California residents, "[t]he mere causing 'of an effect in California is not necessarily sufficient to afford a constitutional basis for the extension of jurisdiction.'" (*West Corp. v. Superior Court* (2004) 116 Cal.App.4th 1167, 1173; *Pavlovich v. Superior Court*, *supra*, 29 Cal.4th at p. 272 [defendant's knowledge that its conduct will likely cause harm in the forum state is insufficient; the defendant's contacts much be such that it "'should reasonably anticipate being haled into court there'"].)

17

2. *Alter ego*

"Alter ego is an extreme remedy, sparingly used." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 (*Sonora Diamond*).) It applies where "the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." (*Id.* at p. 538.) In such circumstances, "courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation." (*Id.* at p. 538.) The doctrine is intended to "prevent[] individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." (*Ibid.*)

Two elements are required to establish alter ego. "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 538.)

As to the first element, there is evidence in the record that Chicago Title maintains separate assets, is separately incorporated, and has its own (1) tax identification number; (2) corporate books and records; (3) board of directors; (4) offices; and (5) business licenses. This evidence supports the court's finding that Chicago Title and Fidelity Inc. were sufficiently separate entities for purposes of the alter ego doctrine. (See, e.g., *Eleanor Licensing LLC v. Classic Recreations LLC* (2018) 21 Cal.App.5th 599, 616 [no alter ego where there was no evidence of commingling of assets, misuse of corporate assets, gross undercapitalization, or a disregard of corporate formalities].)

18

The estate contends Fidelity Inc. provides Chicago Title with claims manuals, pays for outside counsel for its insureds, pays certain overhead expenses, and performs final review of reconsideration letters at its corporate headquarters in Florida. Such actions are insufficient to establish alter ego. "[A]llegations that [a parent entity] shares office space, employees, and corporate control with its subsidiaries, sets policies for its subsidiaries, and indemnifies its subsidiaries . . . do not establish that the [separate] entities are alter egos. "'A parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego.'"" (*Kellman v. Whole Foods Market, Inc.* (N.D.Cal. 2018) 313 F.Supp.3d 1031, 1047; see *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 225 ["Normal characteristics of ownership, such as some degree of direction and oversight, interlocking directors and officers, a close financial connection, consolidated reporting, and shared professional services are insufficient to establish an agency relationship"].)

Further, even if the estate could establish the first element of alter ego, it has not shown that there will be an inequitable result if Fidelity Inc. and Chicago Title are not treated as alter egos. To establish an inequitable result, there "must be some conduct amounting to bad faith that makes it inequitable for [Fidelity Inc.] to hide behind the corporate form." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418.) Fidelity Inc.'s exercise of control over Chicago Title by itself insufficient to show bad faith. (See *Kellman v. Whole Foods Market, Inc.*, *supra*, 313 F.Supp.3d at p. 1047; *Strasner v. Touchstone Wireless Repair & Logistics, LP*, *supra*, 5 Cal.App.5th at p. 225.) The estate has not cited any persuasive evidence that Fidelity Inc.

19

is using Chicago Title to commit fraud or other misdeeds. (See *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539.)

The estate also argues Fidelity Inc. is improperly using a "payroll subsidiary," which we assume refers to FNMS, to commit fraud and other misdeeds. But even if this were true— and we see no evidence that it is—this would only establish alter ego between Fidelity Inc. and FNMS, not Fidelity Inc. and Chicago Title.

### 3. *Remaining arguments*

The estate appears to suggest jurisdiction is proper because Fidelity Inc. did not contest jurisdiction in a prior case filed against it in state court. But jurisdiction is assessed on a case-by-case basis. (*Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1567–1568.) Acquiescence to jurisdiction in a prior case does not extend to future cases. "A party's consent to jurisdiction in one case . . . extends to that case alone." (*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.* (2d Cir. 1991) 937 F.2d 44, 50, fn. 5.)

Finally, the estate appears to contend that Fidelity Inc. is subject to jurisdiction because it is directly liable for bad faith practices and unfair competition under California law. But, even if this were true, liability is not jurisdiction. "Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants" while "jurisdiction depends only upon each defendant's relationship with the forum." (*Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1365.) The estate has not explained how Fidelity Inc.'s alleged liability subjects it specific jurisdiction.

## II.

### CHICAGO TITLE'S MOTION TO DISMISS

The estate argues the court erred by denying the motions to compel. It claims the Circelli and Urquhart depositions were necessary to obtain jurisdictional discovery to oppose the motion to quash. Before we review the merits of the estate's argument, we address Chicago Title's motion to dismiss this portion of the appeal.

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292.) Discovery orders are generally not appealable. (*Doe v. McLaughlin*, *supra*, 83 Cal.App.5th at p. 647.) The estate argues we may review the orders denying the motions to compel because they are ancillary to the motion to quash. In support, it cites *Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703. But the estate fails to cite a specific page in *Mihlon*, and it is unclear how *Mihlon* supports its assertion that we may review a discovery order that is ancillary to a motion to quash. *Mihlon* only holds that a plaintiff has a right to conduct discovery to oppose a motion to quash for lack of personal jurisdiction. (*Id*. at p. 710.) We see nothing in *Mihlon* that authorizes us to review the estate's appeal of the motion to compel orders.

The estate also argues "all matters subsumed in the judgment are proper matters for appeal." (Citing *Flores v. Department Of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 203–204; *Coe v. City of Los Angeles* (1994) 24 Cal.App.4th 88, 91.) But we are not aware of any judgment below. The estate has not cited any in the record or stated when judgment was entered.

Finally, the estate argues that the motion to compel orders are "[s]imilar to an appealable discovery order 'where the order is ancillary to

21

litigation in another jurisdiction and operates as the last word by a California trial court on the matters at issue.'" (Quoting *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293, 1299.) The motion to compel orders do not involve litigation in another jurisdiction. And while they may be the last word on jurisdictional discovery in this case, the estate has not explained why an exception covering discovery orders ancillary to litigation in other jurisdictions should apply here.

"'When a party appeals from both appealable and nonappealable orders, courts in this state regularly dismiss the appeal from the latter order.'" (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.) The estate has not met its burden of showing the motion to compel orders are appealable. (*Brown v. Upside Gading, LP* (2019) 42 Cal.App.5th 140, 144 [appellant has burden of showing an interlocutory order is appealable].) Thus, we grant Chicago Title's motion to dismiss the estate's appeal of these orders.[4]

Besides, we would affirm the motion to compel orders even if we were to review the merits of the estate's appeal. The court denied the motions

---

[4] To clarify, we do not hold that discovery rulings relating to motions to quash for lack of jurisdiction can never be reviewed by an appellate court. The estate has just failed to show how the motion to compel orders can be reviewed here. For example, appellate courts have discretion "to treat an appeal as a petition for a writ of mandate when . . . there [is] no adequate remedy at law." (*Shrewsbury Management, Inc. v. Superior Court* (2019) 32 Cal.App.5th 1213, 1221.) "Writ review may be appropriate . . . to prevent an unjustifiable denial of discovery." (*Volkswagen of America, Inc. v. Superior Court* (2006) 139 Cal.App.4th 1481, 1487.) The estate has not made this argument, so we will not consider whether writ review is appropriate here. (*Cahill, supra,* 194 Cal.App.4th at p. 956.)

to compel under the apex doctrine. Among other things, the trial court found the estate had not exhausted less intrusive discovery methods.

On appeal, the estate contends it did not try less intrusive discovery methods because Fidelity Inc. and Chicago Title would not provide witnesses with knowledge of the joint employment issues or Fidelity Inc.'s alleged control of the claims review process. This assertion is unsupported by the record. Fidelity Inc. offered PMQ witnesses other than Circelli and Urquhart to provide the information the estate sought. But the estate refused these offers. Consequently, the estate cannot claim it was unable to exhaust less intrusive discovery methods. The offered PMQ witnesses may not have had the information the estate wanted. But it cannot compel the depositions of high-ranking corporate officers based on an assumption that the offered PMQs lacked the relevant information.

Further, we note that Fidelity Inc. offered to provide a witness specifically requested by the estate, Kayla VanCannon, a claims counsel in the Nebraska claim center. But the estate would not agree to a deposition date.

In short, the estate was offered PMQ witnesses and VanCannon to depose. It had several months to conduct these depositions but failed to do so. Given this record, we would find no abuse of discretion if we addressed the merits of the estate's argument. (See *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 467 [motion to compel rulings are reviewed for an abuse of discretion].)

## DISPOSITION

The trial court's order granting the motion to quash is affirmed. The estate's appeal of the motion to compel orders is dismissed. Fidelity Inc. and Chicago Title are entitled to their costs on this appeal.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

SCOTT, J.